# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 20-1969V
UNPUBLISHED

| | |
|---|---|
| DAWN FELTON,<br><br>　　　　　　　Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>　　　　　　　Respondent. | Chief Special Master Corcoran<br><br>Filed: November 4, 2024 |

*Jonathan Joseph Svitak*, Shannon Law Group, PC, Woodbridge, IL, for Petitioner.

*Mary Eileen Holmes*, U.S. Department of Justice, Washington, DC, for Respondent.

### DECISION AWARDING DAMAGES[1]

On December 23, 2020, Dawn Felton filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that she suffered a Shoulder Injury Related to Vaccine Administration ("SIRVA") as a result of an influenza vaccine administered to her on September 18, 2020. Petition, ECF No. 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU"). Although entitlement was conceded, the parties disputed the proper damages to be awarded.

For the reasons described below, and after holding a brief hearing, I find that Petitioner is entitled to damages in the total amount of **$64,708.99, representing an**

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

**award of $64,000.00 for Petitioner's actual pain and suffering, plus $708.99 for Petitioner's unreimbursed expenses.**

### I.     Relevant Procedural History

As noted above, this case was initiated in December 2020. On June 23, 2023, Respondent filed a Rule 4(c) Report conceding Petitioner's entitlement to compensation. ECF No. 36. Accordingly, on June 27, 2023, I issued a ruling on entitlement in Petitioner's favor. ECF No. 37. After attempting to informally resolve the issue of damages, the parties informed me in September 2023 that they could not do so. ECF No. 41. I therefore provided the parties an opportunity to file written briefs, and later scheduled this matter for an expedited hearing and ruling. ECF No. 42; ECF No. 46; Hearing Order (Non-PDF) filed October 4, 2024.

The hearing was held on October 25, 2024, and addressed an appropriate award of pain and suffering.[3] Petitioner requests that I award her $105,000.00 for past pain and suffering. ECF No. 43; ECF No. 45. Respondent proposes that I award the lesser amount of $47,500.00 for actual pain and suffering. ECF No. 44. The parties agreed to unreimbursed expenses of $708.99. ECF No. 47.

### II.    Legal Standard

In another recent decision, I discussed at length the legal standard to be considered in determining damages, and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Sections I and II of *Yodowitz v. Sec'y of Health & Hum. Servs.*, No. 21-0370V, 2024 WL 4284926, at *1-3 (Fed. Cl. Spec. Mstr. Aug. 23, 2024).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[4]

---

[3] A transcript of the October 25, 2024 Hearing has not yet been filed, but is incorporated by reference herein.

[4] *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.*, No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

### III.     Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including, but not limited to: Petitioner's medical records, affidavits, filings, and all assertions made by the parties in written documents and at the expedited hearing held on October 25, 2024. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

As the record establishes, Petitioner (then 60 years old) received the flu vaccine on September 18, 2020, at the office of her primary care provider ("PCP"). Ex. 2. Only three days later she returned to her PCP on September 21, 2020, complaining of right shoulder pain since the night of her vaccination. Ex. 5 at 15. Petitioner underwent an ultrasound which demonstrated "[n]onspecific hyperechoic texture change in the subcutaneous fat could represent sequela of recent injection." Ex. 19 at 79. Approximately two weeks later, on October 5, 2020, Petitioner sought treatment from an orthopedist. Ex. 15 at 80-83. Petitioner reported that she had severe pain that began the night of her vaccination. *Id.* at 83. On examination, Petitioner was found to have tenderness at the acromion, reduced range of motion, and impingement syndrome. *Id.* at 82-83. X-rays were taken and demonstrated a lateralized acromion. *Id.* at 82. Petitioner was assessed with a right shoulder pain and impingement, and was referred to physical therapy. *Id.* at 83. Petitioner was offered but declined a steroid injection to treat her pain. *Id.*

Ultimately, Petitioner underwent treatment for her shoulder injury for approximately nine months,[5] including: nine physical therapy sessions.[6] Petitioner's reported pain levels varied from mild to high (ranging from zero out of ten to eight out of ten). *See e.g.*, Ex. 6 at 28, 33, 36; Ex. 15 at 27, 60, 66, 70, 78, 80.

Petitioner completed her last physical therapy session on June 25, 2021, and was discharged to a home exercise program. Ex. 6 at 36-41. At that time her condition had

---

[5] This includes a gap in Petitioner's treatment of approximately five months, between December 9, 2020 and May 12, 2021. Ex. 15 at 52; Ex. 6 at 28.

[6] Petitioner's physical therapy first six sessions occurred between October 9, 2020, and December 9, 2020; Petitioner's final three physical therapy sessions occurred between May 12, 2021, and June 25, 2021. *See generally* Ex. 15; Ex. 3; Ex. 6 at 28-36.

improved, although she was not fully recovered. Ex. 6 at 36-37. Petitioner reported a current pain level of one out of ten, and a worst pain level of eight out of ten. *Id.* at 36. Overall, Petitioner was described as "80% better but increased pain with [activities of daily living] – toilet, dressing, dishes with mild soreness; some discomfort with making the bed and carrying groceries; have not noticed it with yardwork." *Id*. Petitioner sought no further treatment for her shoulder injury, although subsequent unrelated medical records from 2021 reference her shoulder issue. *See* Ex. 19 at 29, 56.

In making my determination, I have fully considered Petitioner's affidavit and the sworn declarations from her family, friends, and colleagues, describing the pain and limitations she experienced both personally, professionally, and in regard to her activities of daily living, following her vaccination. Exs. 1, 7-14. In particular, a master level instructor of Tae Kwon Do, Petitioner was unable to fully participate in the sport. Exs. 1, 9, 13.

In sum, I find I find that Petitioner's injury was initially relatively severe – causing her to seek treatment only three days after her vaccination. But thereafter her treatment was fairly conservative over the course of nine months, including a five-month gap. She elected not to receive steroid injection, and surgery was not required. Such interventions in my experience are taken by petitioners with more severe SIRVA injuries. Additionally, these interventions (surgery and steroid injections) are often quite painful and extensive, justifying higher awards. I observe that Petitioner did complete two rounds of physical therapy, for a total of nine sessions, which likely contributed to her successful recovery.

Petitioner argues in her brief that her case is comparable to *Leslie v. Sec'y of Health & Human Servs.*, No. 18-39V, 2021 WL 837139 (Fed. Cl. Spec. Mstr. Jan. 28, 2021) (awarding $125,000.00 for actual pain and suffering), and *Danielson v. Sec'y of Health & Human Servs*, No. 18-1878V, 2020 WL 8271642 (Fed. Cl. Spec. Mstr. Dec. 29, 2020) (awarding $110,000.00 in pain and suffering). However, I observe the duration of the injuries in the cases cited by Petitioner were much longer than the duration of her injury. Additionally, the petitioner in *Danielson* underwent three steroid injections and suffered bone erosion – factors not present in the Petitioner's case. Overall, Petitioner's comparable cases do not provide a reasonable range for her pain and suffering award.

Respondent, by contrast, cites *Mejias v. Sec'y of Health & Human Servs.*, No. 18-0442V, 19-1944V, 2021 WL 5895622 (Fed. Cl. Spec. Mstr. Nov. 10, 2021) (awarding $45,000.00 for actual pain and suffering) and *Ramos v. Sec'y Health & Human Servs.*, No. 18-1005V, 2021 WL 688576 (Fed. Cl. Spec. Mstr. Jan. 4, 2021) (awarding $40,000.00 for actual pain and suffering) in support of his recommended award of $47,500.00. However, I find that Respondent's cases represent less severe injuries than the instant

case. For example, the *Ramos* petitioner delayed treatment for 121 days. Conversely, while the *Mejias* petitioner sought care shortly after vaccination, he was then only seen twice before an eight-month gap in treatment and underwent no physical therapy.

Rather, I find the following cases, all awarding $65,000.00 in pain and suffering, to be the best comparables to the instant claim. *See generally Henderson v. Sec'y of Health & Hum. Servs.,* No. 20-1261V, 2023 WL 2728778 (Fed. Cl. Spec. Mstr. Mar. 31, 2023); *Griffore v. Sec'y of Health & Hum. Servs.,* No. 19-1914V, 2022 WL 1584682 (Fed. Cl. Spec. Mstr. Apr. 5, 2022); *Magee v. Sec'y of Health & Human Servs.*, No. 18-185V, 2020 WL 5031971 (Fed. Cl. Spec. Mstr. July 21, 2020). These cases, like Petitioner's claim, all involve relatively conservative treatment that largely took place over the nine to thirteen months following vaccination. However, these cases also involved petitioners whose ability to care for very young children was comprised during the course of their injuries – a unique personal circumstance justifying a slightly higher award.

Accordingly, **I find that $64,000.00 represents a fair and appropriate amount of compensation for Petitioner's past or actual pain and suffering.**

## Conclusion

**I award Petitioner a lump sum payment of $64,708.99, representing $64,000.00 for Petitioner's actual pain and suffering, plus $708.99 for Petitioner's unreimbursed expenses, in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a) of the Vaccine Act. *Id*.

This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[7]

**IT IS SO ORDERED.**

s/Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[7] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.